### WIGGINS *vs.* CLEGHORN, HERRING & COMPANY.

1. Where a note given for guano provided that it was sold under the analysis, of the inspector, and that the "inspector is hereby constituted and recognized as —— agent, and —— agree to be bound by his inspection," there was not such an express contract on the part of the purchaser to be bound by the analysis as to authorize the court to strike his plea that the guano was worthless as a fertilizer. The contract was ambiguous, and its meaning should have been left to the jury.

2. If the plaintiffs have closed and the defendant has introduced testimony, the latter is entitled to have the jury pass upon the case. It is error for the court to withdraw defendant's evidence and direct a finding for the plaintiffs.

Contracts. Estoppel. Pleadings. Practice in the Superior Court. Promissory notes. Before Judge HILLYER. DeKalb Superior Court. September Term, 1877.

Reported in the decision.

L. J. WINN, for plaintiff in error, cited as follows: Striking plea, 60 *Ga.*, 520; *Jackson vs. Langston & Crane*, August Term, 1878. Blanks in contract, 1 Gr. Ev., §§ 568, 568 *a;* 1 Saunders' Pl. & Pr., 113, 114.

E. A. ANGIER; W. H. HULSEY; W. L. CALHOUN, for defendants, cited as follows: Construction of contract for court, Code, §2754; 36 *Ga.*, 459; 59 *Ib.*, 119; 5 *Ib.*, 381; Code, §2757. Cases similar to this, 60 *Ga.*, 383 ; *Jackson vs. Langston & Crane*, (this term); *Woolfolk vs. Beach*, (this term.)

WARNER, Chief Justice.

The plaintiffs sued the defendant on the following note :

"$67.50. MAY 20, 1876.

"On or before the first of November next I promise to pay Cleghorn, Herring & Co., or bearer, sixty-seven dollars and fifty cents for one ton of commercial manure, known as Whann's raw bone superphosphate, etc. (Then follows cotton option.) It is expressly understood and covenanted that said Cleghorn, Herring & Co. sell said commercial manure, as to its qualities and effects on crops, on the analysis of the inspector, whose brand is on every sack. Said inspector is hereby constituted and recognized as ——— agent, and ——— agree to be bound by his inspection, as made or indicated by his brand on each and every sack. [Signed] LOUIS WIGGINS."

The defendant filed the following pleas :

1. General Issue.

2. ["And for further plea in this behalf, the defendant says he is a farmer by profession and occupation, and desiring to buy a fertilizer to be used in fertilizing his lands in DeKalb county for the increased production of his crop of corn, cotton, and other produce on said lands, for the year 1876, he applied to the plaintiffs through their agents, and fully informed said plaintiffs of said wish, purpose and desire of this defendant. That said plaintiffs, well knowing the desire of the defendant as aforesaid, said they had the guano which would fill the desire of the defendant, and which was equal to any standard guano. Defendant, re-

lying solely on the representations of the plaintiffs that the guano offered by the plaintiffs to the defendant was a good fertilizer, and would materially add to the productive qualities of the said land,] purchased of the plaintiffs ten sacks of said guano, for the purchase of which he gave the note sued on, and there was no other consideration for said note.

["Defendant further says that if there was any inspection of said guano, it was unknown to him, and he never saw any analysis or inspection of that guano at the time, nor has he seen any since that time. Defendant further says that if said guano was ever inspected, it was done by a public officer of the state, who was not, and could not in any manner be or become the agent of this defendant in the inspection thereof, nor did said inspector inspect in the name or behalf of this defendant; another inspection, if any was ever made, was completed and furnished prior to and long before said purchase was made.] There was no brand on any of said sacks shown to defendant, indicating what said guano was in quality or quantity of ingredients; nor was there any statement of the effects of said guano on crops, under the brand of the inspector, ever furnished or shown to this defendant, [nor has this defendant any knowledge of the true character of the contents and effects of said guano. This defendant thought and believed he was buying an article of guano which was reasonably suited for the purpose for which it was warranted, and for which the plaintiffs knew this defendant wanted said guano. Defendant further says he signed said note in total ignorance of the legal effect, if any, in reference to the construction, as to the relation of this defendant to the inspector and his acts in the premises, and that the procuring of this defendant to sign said note with said conditions as to the inspection, was a fraud upon defendant; and this defendant did not thereby intend, and it was so known to plaintiffs, to bar himself of any defense to said guano note in the event said guano should prove worthless; and defendant says that at

the time he gave his note for said guano, he informed the plaintiffs if said guano was not good that he, the defendant, would not pay for it, and at that time the plaintiffs said to defendants : 'Certainly not : you shall not pay for it, and I cannot make you.'] And defendant says he is not so barred of his defense by the terms of said note. Defendant further says that he used said guano upon his crops in the year 1876, and that there were good seasons ; that he cultivated his crop well, and in good time and in proper manner, ploughing and hoeing it as usual and customary, and that said guano proved to be utterly worthless, and this defendant has not been benefited one cent by the use of it, but, on the contrary, has been damaged by the expense of hauling it and using and applying said worthless guano to his crop, to the amount of $25.00, by reason of the failure of said pretended guano to be of any use whatever, [and its failure to come up to the standard warranted by the plaintiffs] and prays judgment against the plaintiffs for said sum. Defendant further says that said guano was not analyzed by the inspector, neither was said inspector's brand on the sacks of the guano purchased of the plaintiffs by this defendant."

Upon motion the court struck all of said plea indicated by brackets, which embraced nearly the whole of it. The defendant then introduced the following evidence :

The defendant testified : " There was a ring or mark thus ⊂⊃ on the sacks ; it was dark or smutty in said mark or ring. That might have been a brand, but there were no marks or letters intelligible within said ring. If there were ever any letters or brands they were utterly illegible when I purchased said guano. My recollection is that said note was given some time after I got the guano, and not at the time I got it."

Answer of John S. Wright : "Am book keeper of Cleghorn, Herring & Co. Plaintiffs sold Whann's phosphate in 1876. Shipped it that year from Savannah, Georgia, Charleston, South Carolina, and Wilmington, North Carolina. They never knowingly shipped any phosphate that was not prop-

erly analyzed, inspected and branded. It was inspected and branded in Savannah by Dr. A. Means, and that shipped from Charleston, Wilmington and Port Royal into Georgia, by O. P. Fitzsimmons, who were appointed by the state of Georgia for that purpose. Copies of the analyses of the phosphate referred to were furnished to plaintiffs by the Georgia state inspectors as having been made by Prof. Land, the state chemist of Atlanta, Georgia. I was not present when the analyses were made, nor when the sacks were branded. The agents of the plaintiffs at the seaboard were instructed to allow the state inspectors to draw samples of the fertilizers in any manner that they might elect. I was not present when the state inspectors performed their duty."

W. J. Land answers: "My profession is that of analytical chemist. My official position in 1876, and now is, that of analytical chemist to the department of agriculture, for the analysis of fertilizers and the material used in the manufacture of the same. I did analyze a manure known as 'Whann's raw-bone super-phosphate,' and did for the plaintiffs in the years 1875 and 1876, through the inspector. It was my official duty to send the analysis to inspector Fitzsimons, of Augusta, from whom I received the samples. I also received from and sent analysis of samples to Dr. A. Means, at Savannah, and the above analysis is approximate to the analysis sent him, given as an average analysis made that season of the fertilizer. I did not analyze the particular lot sold to defendant, but presume his lot was received from the bulk samples of which I analyzed. Inspectors Means and Fitzsimons furnished me with samples in bottles per express. I only analyzed what was sent me."

After the defendant had closed his evidence, the court, on its own motion, withdrew that evidence from the jury, and directed them to find a verdict for the plaintiffs, which was done. The defendant made a motion for a new trial on the grounds therein stated, which was overruled and the defendant excepted.

1. In our judgment the striking of the defendant's plea was

error. This court never has decided, and probably never will decide, that the inspector's brand upon sacks of guano will preclude the purchaser thereof from showing that the guano was worthless as a fertilizer, unless such purchaser expressly stipulates in his contract that it shall have that effect, or, as was stipulated in the contract of the purchaser in *Bostwick vs. Duncan, Johnston & Co.*, 60 *Ga.*, 383, that he received the guano " without warranty of vendor, and with all faults at purchaser's risk." There is no such expressed stipulation by the purchaser in the contract sued on in this case.

In striking the defendant's plea the court appears to have assumed that the defendant had stipulated in his contract that he would be bound by the inspector's brand as made and indicated on each sack of the guano. This might have been so if the defendant's name had been inserted in the blank place in the note, or other words had been inserted in the blank, so as to have left no doubt as the extent of the defendant's stipulation, as if the blanks had been filled in the contract so as to have read, said inspector is hereby recognized as "my" agent, and "I" agree to be bound by his inspection, etc. But the trouble is that the blanks in the note were not filled with any words, thus leaving the meaning of the contract ambiguous and doubtful. The general rule undoubtedly is that the construction of a written contract is a question for the court, but where any matter of fact is involved, as the proper reading of an obscurely written word, the jury should find the fact. Code, §2754. See §2957, as to explaining ambiguities in a written contract.

2. When on the trial of a case the plaintiff submits his evidence and closes his testimony, and the defendant introduces his evidence, he is entitled to have the jury pass upon it under the charge of the court as to the law applicable thereto, and it was error for the court to withdraw the defendant's evidence from the jury and direct them to find a verdict for the plaintiffs. Whether the defendant has a valid defense to the plaintiffs' demand or not we express no

opinion, but we order a new trial that his case may be tried according to the laws of the land, as hereinbefore indicated. Let the judgment of the court below be reversed.